EDWIN D. SEATON v. THE PERE MARQUETTE BOOM COM-
PANY.

*Logs and logging—Contract—Overpayment.*

1. In the absence of a contract between a log-running company
and a log-owner, fixing the terms and price of running his
logs, the company is left, under the statute, to run such of the
logs as obstruct the stream, and charge therefor a reasonable
compensation.

2. A log-running company is not entitled to charge for running any
more logs than are delivered, unless it can show that those
undelivered were lost without its fault, and the burden of proof
is on the company to show such loss.

3. A log-running company mailed to a log-owner a copy of the
"rates and rules of service" adopted by the company in refer-
ence to running and delivering logs for the coming year,
which provided that final settlement was to be made on the
woods scale. The log-owner did not accept the terms and con-
ditions of the company contained in the rules by signing the
same, as requested, nor did he comply with the requirement of
the rules in other respects; but some time after receiving such
copy he filled out and signed, and forwarded to the company,
a blank statement it had sent to him, showing the amount of
logs put into the river by him, with certain other information
as to log-mark, etc. And it is held that there was no such
meeting of the minds of the parties as would justify the court
in holding that they agreed upon the woods scale as determin-
ing the amount which should be paid for running the logs, or
the amount of logs which should be delivered by the company.

4. Where, in such a case, the log-owner claimed a large shortage
in the amount of logs delivered as between the woods and
mill scales, but, to secure their delivery, paid the running
charges on the basis of the woods scale, under protest, and
sued to recover back the overpayment, an instruction by the
circuit judge that unless the jury were satisfied that the com-
pany, through its carelessness and negligence in running and
delivering the logs, had failed to run and deliver to the plaint-
iff the amount mentioned in the woods scale, he would not be
entitled to recover, but if, through such carelessness and negli-

gence, the company had only run and delivered the quantity of logs shown by the mill scale, the plaintiff might recover, is as favorable as the company was entitled to.

Error to Mason. (Judkins, J.) Submitted on briefs November 19, 1890. Decided December 24, 1890.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*M. B. Danaher,* for appellant, contended:

1. Under a count for money had and received damages cannot be recovered to prove which it is necessary to show a breach of a special contract; citing *Phippen v. Morehouse,* 50 Mich. 537; *Butterfield v. Seligman,* 17 Id. 95.

2. The statement of an agent which is not one of fact based on personal knowledge, and which was not made at the time of the transaction to which it relates, nor in the course of his duty as agent, is not evidence against the principal; citing *Converse v. Blumrich,* 14 Mich. 109; *Mabley v. Kittleberger,* 37 Id. 360; *Patterson v. Railway Co.,* 54 Id. 92.

3. That plaintiff saw some of his logs in a boom of another does not tend to show negligence. No system of sorting can prevent the evil of stray logs, and negligence will not be presumed; citing *Transportation Co. v. Downer,* 11 Wall. 129.

4. An offer of settlement which is understood to be made for the purpose of a compromise is not an admission of legal liability; citing *Kinney v. Folkerts,* 78 Mich. 687.

5. There was no evidence to show what the difference in the two scales would naturally be, owing to difference in the judgment of the scalers and the sinking of logs; citing *Ortman v. Green,* 26 Mich. 209; and the mill-scale sheets were therefore irrelevant on any theory of the case.

*C. G. Wing,* for plaintiff, contended:

1. Under the facts of this case a common-count declaration appears to come easily within the rule stated in *Carney v. O'Neil,* 27 Mich. 497.

2. The mill scale was not introduced as the contract basis of driving charges, but as one means of proving that defendant had not performed its work,—to prove the utter failure to deliver over 20 per cent. of the logs that defendant was paid for delivering. It was a scale of unusual accuracy, made by a

competent scaler, and stands unquestioned, and was the best attainable evidence. It was, moreover, a scale of logs, not of lumber, as in *Lane v. Boom Co.*, 62 Mich. 67.

CHAMPLIN, C. J　This case originated in justice's court. The action was commenced by a summons in *assumpsit* to recover back from the defendant money which, the plaintiff claims, he had overpaid to the defendant, on account of driving some logs.

The defendant is a corporation organized under the laws of the State of Michigan, and engaged in running and driving logs in Pere Marquette river. The plaintiff put certain logs in the river in the spring of 1889, which the defendant ran down the river, and delivered to the plaintiff, during the sawing season of that year. A portion of the logs in question were hemlock, and the balance of them were pine. In the spring of 1889, or in the month of January in that year, the defendant mailed to the plaintiff what is called the "rates and rules of service" adopted by the defendant in reference to its running and delivering logs for the year 1889. These rates and rules for service specified the prices which it would charge for running logs from certain divisions upon the line of the river, and for assorting and delivering the same. The rules also provided, among other things, as follows:

" 6. Payments to be made as fast as logs are ready for delivery, before delivery, or logs will be stored at owner's expense. Sworn weekly statements of the amount of logs sawed of each and every mark shall be rendered by each mill-owner, from statement by sworn scaler, to the boom company, on the Monday succeeding; the final settlement to be made on the woods scale."

Rule 7 of the company reads as follows:

"All parties employing the boom company to do their work shall, on the first day of April, and on the first day of each succeeding month, give a sworn statement of

amount of logs put in by them at the different divisions on the Pere Marquette river and its branches, or charges will be computed from division thirteen for logs in south branch, and from division six in north branch. The company does not hold itself to running the logs absolutely, but only to reasonable diligence after taking possession of the drive. The log-owner receiving this is requested to accept by affixing signature, and returning the same to the boom company by return mail.

"PERE MARQUETTE BOOM COMPANY.

"Accepted_____

"_____18____"

It does not appear, in the case before us, that the plaintiff ever accepted the terms and conditions contained in these rules by signing the same, as requested, and returning them to the defendant; nor does it appear that he complied, in any respect, with rules 6 and 7, with reference to making sworn weekly statements of the amounts of logs sawed, etc., or of the amounts put in on the first day of April, and each succeeding month, on the Pere Marquette river. But it does appear that, some time in the latter part of May, the defendant forwarded to the plaintiff the blank form, to be filled out by him, and returned to defendant, substantially as follows:

"LUDINGTON, May 27, 1889.

"To the Pere Marquette Boom Company, Ludington, Mich.:
"The following statement shows the amount of logs and other floatables put into the Pere Marquette river and its branches by ————, as stated."

Then follows a blank for the date, the time from and to which the logs were put in, the name of the logger, the log-mark, the division, the number of logs, and the number of feet, to which is appended:

"I hereby certify that the above statement is correct to the best of my knowledge and belief."

This blank was received by plaintiff, and filled in, showing that the total number of feet was 791,228, and

the certificate was signed by him, and returned to the boom company.

During the season, the plaintiff made complaints to the defendant that it was not using due care in separating and delivering his logs to his mill, and the officers of the company promised to give the matter their attention, did so, and reported that the men in charge had been careless during most of the season. The plaintiff complained also that all of his logs had not been delivered to him; that there was quite a shortage; that he was satisfied that there was a large shortage, and the officers of the company said that he should go on and saw up his logs, and ascertain how much he had, and they would try to do what was right and fair in the matter; but that, finally, they refused to deliver the balance of his logs, unless he would pay the price which they charged according to the statement sent to them by him, and, in order to get his logs delivered, he was compelled to, and, indeed, they suggested that he should, pay the same under protest, which he did, and then they delivered the logs.

Plaintiff finished sawing, and testified himself, and introduced other evidence, to show that a correct scale of the sawing was kept in the mill, the number of feet of logs which were delivered to him by the defendant being shown by that scale; that it amounted to 636,167 feet, being a shortage from that shown by the woods scale furnished to the defendant on the blank stated of over 155,000 feet; and this suit was brought to recover back what he had overpaid for the running and delivering of the logs.

Upon the trial, the defendant contended that these words: "The final settlement to be made on the woods scale,"—being the closing paragraph of the sixth rule, were binding upon plaintiff, and that it had the right to charge him for running the amount of logs shown by the

woods scale. There are two reasons why this contention in this case is not correct. The first is that plaintiff never signed the contract. He put the logs into the river, doubtless, intending that the boom company should run them, as any other parties would intend, perhaps, if they neglected to run them themselves, that the boom company should do the work of running them. But, unless there is a contract existing between the parties agreeing upon the terms and price of running, the company is left, under the statute, to run such logs as obstruct the stream, and charge therefor a reasonable compensation. The terms of this statement, embracing the rules, sent out to the different log-owners, contemplate that, in order to make the contract binding between the parties, it should be accepted and signed and returned to the company; otherwise it may be presumed that, in the absence of any contract, the parties are left to that contract which is made by the statute.

But we are not prepared to accede to the proposition that these words were intended, in the connection in which they were used, that this woods scale should be the scale upon which final settlement should be made, and that such scale should be binding upon both parties. The rule does provide that sworn weekly statements of the amount of logs sawed of each and every mark shall be rendered by each mill-owner, from a statement by a sworn scaler, to the boom company, on the Monday succeeding. Now, if the woods scale is to be final and arbitrary of the amount which shall be paid for running the logs, of what use is this provision for the scaling of the logs in the mill, and rendering a sworn statement? Besides, as suggested by the circuit judge, if the woods scale is the criterion, if the party was to pay for the number of feet shown by the woods scale, then the

defendant would be equally bound to run and deliver that amount upon the final settlement, and, if there was a mistake in the woods scale, it might lay the defendant open to a large liability. We do not think there was any such agreement, or meeting of the minds of the parties, from what transpired with reference to these logs, as would justify us in holding that their minds agreed upon the woods scale which should determine the amount which should be paid for running the logs, or the amount of logs which should be delivered by the boom company. The circuit judge was inclined to the opinion that the parties had agreed upon that as the scale upon which settlement should be made, and instructed the jury that, unless they were satisfied that the defendant, through their carelessness and negligence in the running and delivering of the logs, had failed to run and deliver the logs to the plaintiff, the plaintiff would not be entitled to recover; but that if, by their carelessness, they had neglected to run and deliver the logs mentioned in that scale, and had only run and delivered the quantity shown upon the trial to have been sawed at the mill, then the plaintiff might recover back the excess. We think this was putting the case in as favorable a light before the jury as the defendant was entitled to. It was not claimed that any logs had been run, and were still in the hands of the boom company, upon which the charges had not been paid. They claimed to have delivered all the logs that came to their hands. They certainly were not entitled to charge for running any more logs than they delivered, unless they could show that they were lost without their fault. And we think the burden of proof was upon them, if they claim an excess for running logs which they had not delivered, to show that they had per-

formed the work, and that the logs had been lost without their fault.

The scale-sheets were properly received in evidence, and we discover no error in the record before us, and judgment is affirmed.

The other Justices concurred.